## SMOOT *v.* KENTUCKY CENTRAL RY. Co.*

### (*Circuit Court, D. Kentucky.* August 23, 1882.)

1. **ACTION FOR DAMAGES UNDER CIVIL-RIGHTS ACT OF MARCH 1, 1875—JURISDICTION—ACT MARCH 3, 1875.**

   Whether jurisdiction of a civil action for damages arising out of a violation of the equality guarantied by the first section of the civil-rights act of March 1, 1875, is conferred upon the United States courts by that act, *quære.* But *held* that, if that act is constitutional, jurisdiction is conferred by the act of March 3, 1875, as being a case "arising under the constitution or laws of the United States."

2. **FOURTEENTH AMENDMENT — CITIZENSHIP — EQUALITY — CIVIL-RIGHTS ACT, MARCH 1, 1875.**

   The declaration in the first section of the fourteenth amendment "that all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside," did not of itself give congress power to protect, by legislation, the rights pertaining to state or national citizenship.

3. **SAME—PROHIBITIONS RELATE ONLY TO ACTION BY STATES, NOT BY INDIVIDUALS.**

   The inhibitions of that section, which follow the declaration above quoted, are directed solely against action by the states, not to action by individuals; and therefore if a state has not attempted, by its laws, officers, or agencies, to overstep the limitation there imposed, no case arises for the exercise of the protecting power of the national government.

4. **SAME—CASE STATED.**

   In an action in the United States circuit court under the civil-rights act of March 1, 1875, the petition alleged that plaintiffs (who were colored persons) and defendant were citizens of Kentucky; that plaintiff, Mrs. Smoot, purchased a first-class ticket over the defendant's road from Paris to Lexington, Ky.; that the train upon which she attempted to take passage consisted of a coach intended and used for ladies, and gentlemen accompanied by ladies, and other inferior coaches; that on account of her race and color she was denied admittance to the ladies' car, and, refusing to accept the inferior accommodations of the other coaches and to give up her ticket, she was forcibly removed from the train; for which plaintiffs asked damages. Upon demurrer to the petition, *held,* that congress had no power to protect the right alleged to have been violated, and the court had no jurisdiction to entertain the action.

*Reported by J. C. Harper, Esq., of the Cincinnati bar.

*John W. Stevenson,* in support of demurrer.

1. The civil-rights act of March 1, 1875, does not confer jurisdiction upon the federal court in an action for damages for a breach of its provision. Such an action may be maintained in the state courts, and in federal courts, when jurisdiction may be derived from the fact of a difference of citizenship. *Culy* v. *Baltimore & Ohio R. Co.* 1 Hughes, 536; *Gray* v. *Cincinnati Southern Ry. Co.* 11 Fed. Rep. 536.

2. An attempt to confer such jurisdiction is not warranted by the fourteenth amendment. That amendment distinguishes the rights and privileges of citizens into those which they have as citizens of the United States, and those which they have as citizens of the states. This distinction is shown and illustrated in *Gibbons* v. *Ogden,* 9 Wheat. 203; *Virginia* v. *Rives,* 100 U. S. 313; *Slaughter-house Cases,* 16 Wall. 74; *U. S.* v. *Cruikshank,* 92 U. S. 542; *Bradwell* v. *State,* 16 Wall. 130; *Ex parte Kinney,* 3 Hughes, 1; *Bertonman* v. *Board of Directors,* 3 Woods, 177; and congress is not authorized to take under its care rights which pertain to citizens of the state.

3. The acts alleged violate those rights only which belong to citizens of the state of Kentucky. The sole power of regulating railways, and defining the rights of passengers thereon within that state, is vested in its legislature, and such rights pertain to persons as a citizen of Kentucky, and are derived from the state.

4. Congress has no right to interfere because the state has passed no act discriminating between passengers on account of color. The prohibitions of the fourteenth amendment and the civil rights act both have reference to state action exclusively.

5. Federal authority is limited to national objects, and the states are left in control of internal government. *Gibbons* v. *Ogden,* 9 Wheat. 574; *Brown* v. *Maryland,* 12 Wheat. 419; *Licenses Cases,* 5 How. 589; *New York* v. *Milne,* 11 Pet. 131; *New Orleans* v. *U. S.* 11 Pet. 735; *Conway* v. *Taylor's Ex'rs,* 1 Black, 603; *Cornfield* v. *Coryell,* 4 Wash. C. C. 379; *Crandall* v. *Nevada,* 6 Wall. 36.

*Bateman & Harper,* for plaintiff.

Jurisdiction of this case by the circuit court is conferred by the first section of the act of March 3, 1875, (18 St. at Large, 570,) which includes all causes arising under the constitution and laws of the United States. The acts complained of are infractions of the rights conferred upon plaintiff by the first section of the act of March 1, 1875, (18 St. at Large, 336,) which grants to her the full and equal right to the enjoyment of the accommodations, etc., of public conveyances on land and water. Previous to the last three amendments to the constitution and to this law, plaintiff, as a person of color, did not possess equal rights with white citizens of Kentucky in public conveyances and otherwise, but only held such right as the "dominant race" might from time to time allow them, and were not considered a part of the political community of the United States. *Scott* v. *Sandford,* 9 How. 404. These rights she now—under the constitution and this law—holds in absolute title by grant from the United States, and their violation constitutes a case arising under its constitution and laws. *Gelston* v. *Hoyt,* 3 Wheat. 246; *River Bridge*

*Co.* v. *Kansas,* 92 U. S. 316; 2 Story, Const. 1641–42; *Cohens* v. *Virginia,* 6 Wheat. 264, 279.

2. The jurisdiction claimed is also conferred by the third section of the civil-rights act, (18 St. at Large, 336,) which extends the jurisdiction of the circuit and district courts of the United States to all violationis of this act, without limit as to proceedings. The law provides for three different classes of proceedings, to-wit, indictment, action for a penalty, and damages at common law. The law describes these three as *proceedings,* and the terms used, of "rights at common law," refer to the *secondary* right of action accruing by reason of the violation of the *primary* right of the person granted by the constitution and laws. This secondary right is a right of action at common law for damages for the infraction of a legal right of the person, whether that right is derived from statute or held under the common law.

3. The civil-rights act in question is authorized by the fourteenth amendment to the constitution. Previous to the passage of the war amendments the negroes in this country were legally an inferior race, mostly slaves, and holding no rights as citizens of the United States, and none which might not be invaded by the state authorities at their option. Plaintiff, a native of Kentucky, was the subject of discrimination against her as to her essential rights, including the right to the accommodations of inns, public conveyances, etc., and was not admitted or recognized as a citizen of the state. *Scott* v. *Sandford, supra.* The scope and object of the amendment was to emancipate her race, relieve them from legal disabilities, and place them on an equality before the law with the white people of the country. *Slaughter-house Cases,* 16 Wall. 67.

The first section confers upon her the character and rights of a citizen of the United States, and makes her the *equal* of other citizens of the United States in rights as such. It also confers upon her the character and rights of a citizen of the state of Kentucky—not a portion of them, but the whole—in complete equality with all other citizens of the state. This amendment does not define what these are, but whatever the state prescribes for any, this amendment confers upon and guaranties to plaintiff in *equal* enjoyment with everybody else. The state creates schools, authorizes railroads, and defines the rights its citizens may have in both. The United States, by this amendment, says the plaintiff shall have the *equal* enjoyment of these rights, undisturbed, notwithstanding her race and color. It assumes to protect her place and *equality* as a citizen of the state. So that if a right to ride in a certain mode, and upon certain conditions, upon the defendant's railway is granted to white persons, the United States guaranties it to plaintiff upon the same conditions. 16 Wall. 80.

This amendment is an affirmative grant, and not a negative one; and the fifth section of the fourteenth amendment expressly confers upon congress the power to enforce it by appropriate legislation.

The civil-rights act is exactly within the scope of the amendment, and asserts and provides for the protection of a portion of the rights which it confers, viz., "the full and *equal* enjoyment of the accommodations, privileges, etc., of public conveyances." "Rights and immunities created by a dependent upon the constitution of the United States can be protected by congress."

Chief Justice Waite in *U. S.* v. *Reese*, 92 U. S. 217; *U. S.* v. *Cruikshank*, 92 U. S. 549.

The first section of the amendment is *also* prohibitory upon the states. After conferring upon the colored inhabitants of the United States equal rights as citizens of the United States, and of the states, with other citizens thereof, it further provides: "No state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, and property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The second and third clauses of these prohibitions include all persons, whether citizens or aliens. *Ah Kow* v. *Nunan*, 5 Sawy. 522; *In re Ah Chong*, 2 FED. REP. 733; *In re Ah Fong*, 3· Sawy. 144; *In re Parrott*, 1 FED. REP. 481.

But these prohibitory clauses are founded upon the existence of an equal right previously conferred by the amendment, and of themselves, in connection with the fifth section of the amendment, charge upon the government the duty of protecting this equality of right. The fifteenth amendment is wholly prohibitory. "The rights of citizens, etc., to vote shall not be denied or abridged *by the United States, or by any state*, on account," etc. Yet legislation against individual acts violating or obstructing the right to vote on account of race, although the state had not attempted to abridge it, had been repeatedly sustained. This is the case as to the kuklux bill and enforcement act, punishing *individual* offenses against the right to vote on account of color. *U. S.* v. *Reese*, 92 U. S. 217; *U. S.* v. *Cruikshank*, Id. 542. The first and second sections of the enforcement act, relating to the equal right to vote, is precisely similar to the first and second sections of the act in question, relating to equality of rights in other respects.

Congress has given a clear contemporaneous interpretation of the fourteenth amendment,—the very men who originated and passed it. The original civil-rights act was supposed to have been warranted by the thirteenth, but doubts existing as to its validity, the fourteenth amendment was presented and adopted, with a view to authorize such legislation; and after its ratification, March, 1870, the civil-rights bill of 1866 was re-enacted by the seventeenth section of the enforcement act of May, 1870. The validity of that act is recognized. 92 U. S. 555.

In enforcing the duty of equal protection by the state, congress cannot prosecute the state for its delinquency; it can only reach the citizen, and punish or prevent his violation of the equal rights of others by just such legislation as that in question. Nor can the judiciary inquire into the necessity or expediency of such legislation. Congress is the sole judge as to whether it is necessary or not. *Wynham* v. *People*, 13 N. Y. 475; *License Tax Cases*, 5 Wall. 969; *The Wheeling Bridge Case*, 18 How. 430–2. The court cannot inquire into the fact as to whether the state is or has been delinquent for the determining whether the law should be operative.

BARR D. J. The petition in this case alleges that the plaintiffs are colored people of African descent, residents and citizens of this state and citizens of the United States, and the defendant is a corporation

chartered by this state, owning and operating a railroad running from Lexington to Covington; that the plaintiff, Belle M. Smoot, who is the wife of the plaintiff, Edward J. Smoot, purchased in September, 1881, at Paris, Kentucky, of defendant a first-class ticket on its train from Paris to Lexington. It is alleged that she with said ticket boarded a regular passenger train of defendant's, which was running from Covington through Paris to Lexington, and sought to go into the ladies' car, which was reserved for the use of ladies and the gentlemen accompanying them, but that she was refused admission into said car by defendant's agents, because and only because she was colored and of African descent, and was requested to go into the car which was reserved for gentlemen, and that this car was inferior to that reserved for white ladies. It is for this alleged discrimination that she refused to go into this car, and persisted upon going into the same car with other ladies, and because of this was put off the train between stations by defendant's conductor; and for this they seek the recovery of damages. The suit is brought under the civil-rights act, approved March 1, 1875, (Supp. Rev. St. 148.) The petition has been demurred to, and it is now insisted (1) that as this is a suit for the recovery of civil damages, it is not within the terms of that act, and this court has no jurisdiction; (2) if within the terms of that act, this court has no jurisdiction, because it is not within the constitutional powers of congress to give it, as between citizens of the same state.

The third section of this act provides "that the district and circuit courts of the United States shall have, exclusively of the courts of the several states, cognizance of all crimes and offenses against and *violations* of the provisions of this act." But there are other provisions of the act which raise a serious doubt whether "violations of the provisions of this act" include civil actions for damages.

It is, however, not necessary to decide this question, because if congress has the constitutional right to give this court jurisdiction of this action, it has done so in the judiciary act approved March 3, 1875, which gives circuit courts jurisdiction of "all suits of a civil nature at common law or in equity when the matter in dispute exceeds, exclusive of costs, the sum or value of $500, and arises under the constitution or laws of the United States." If, therefore, this case arises under the constitution, or laws of the United States made in pursuance thereof, this court has jurisdiction. The material question is, has congress the constitutional right to give this court

jurisdiction because of the subject-matter, as alleged in this petition? The first section of the civil-rights act provides—

"That all persons within the jurisdiction of the United States shall be entitled to the full and equal enjoyment of the accommodations, advantages, facilities, and privileges of inns, public conveyances on land or water, theaters, and other places of public amusements, subject only to the conditions and limitations established by law and applicable alike to citizens of every race and color, regardless of any previous condition of servitude." Supp. Rev. St. § 148.

The authority for this enactment is based upon the first section of the fourteenth amendment to the constitution, which is in these words:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States. Nor shall any state deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The fifth section gives congress the "power to enforce by appropriate legislation" this and the other provisions of the amendment. There is no allegation in the petition that there is any law of the state of Kentucky which authorized the defendant to make any discrimination in the treatment or accommodation of its passengers on account of their race or color. There is no such law known to me, and I do not know of anything in the laws of Kentucky which would prevent plaintiff from recovering for the wrong complained of if the facts are as alleged. The defendant had no right under its charter to give plaintiff, if in fact it did give, accommodations on its trains which were inferior to those given white persons because of her race and color; and if she refused to accept such inferior accommodations, and was in consequence put off the train, she is, I think, entitled upon common-law principles to recover damages. But is not that fact a reason, if there was none other, why plaintiffs cannot come into this court with their action? In other words, can congress give this court jurisdiction over this subject, and between citizens of the same state, unless Kentucky has, by it laws or through its officers or agencies, denied to plaintiff the equal protection of the laws, or abridged her "privileges or immunities" as a citizen of the United States?

We will not determine whether the right to travel over railroads in public cars, without discrimination on account of race or color, is

a privilege pertaining to national citizenship.    But assuming that the right to travel to and from the capitol of the nation, to and from post-offices, revenue offices, and United States courts, is a privilege pertaining to national citizenship, and that this includes the right to travel in the usual public conveyances without discrimination because of the citizen's race or color, still, the inquiry remains, has this privilege been abridged by the state or its agencies?   *Crandall* v. *Nevada,* 6 Wall. 35.

The fourteenth and the other amendments are limitations upon the power of the states, and to some extent an enlargement of the powers of congress.    But the enlargement of the powers of congress are for the purpose and to the extent only of enforcing the limitations placed upon the power of the state.    If, therefore, a state has not attempted by its laws, officers, or agencies to overstep these limitations, no case arises for the exercise of the protecting and guaranteeing power of the national government.

The declaration that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and of the state wherein they reside," does not of itself, I think, give congress the power to declare that the federal courts shall have, exclusively of or concurrently with the state courts, original jurisdiction to protect the rights of national and state citizenship.    If this had been the intention, the subsequent inhibitions upon the state would have been entirely unnecessary.

The supreme courts, prior to this declaration, had decided that citizenship of a person born in the United States could only come through a state, and that a person of African descent, though born in one of the United States, could never become a citizen of that state.    *Dred Scott* v. *Sandford,* 19 How. 393.    This declaration in the amendment changed this, and by a broad declaration made all persons, whatever their race, color, or previous condition, born in the United States, and subject to its jurisdiction, citizens of the United States, and of the state whereof they reside.    *Slaughter-house Cases,* 16 Wall. 67.    But this declaration did not of itself give congress the power to protect by legislation the rights pertaining to state or national citizenship.    The power of congress to protect the national citizen in his privileges and immunities, and all persons in certain fundamental rights, is given in the subsequent part of the clause, and this protection is from the action of the states, or its agencies, and not from the acts of individuals, unless individuals act by or through state authority.    *Ex parte Virginia,* 100 U. S. 339.

If the mere declaration of citizenship gives the power to congress, under the fifth section of this amendment, to protect from the acts of individuals the rights pertaining to the citizenship therein declared, this power must extend to protecting the rights pertaining to state as well as national citizenship, as there is no distinction in the declaration of citizenship.

I conclude, therefore, as there is no allegation in the petition that the state of Kentucky has denied the plaintiff the equal protection of its laws, or made or enforced any law which abridges her privileges or immunities as a citizen of the United States, nor is there, in fact, any such law or denial of protection known to me, the all-important jurisdictional fact to give this court jurisdiction is wanting, and the demurrer must be sustained and petition dismissed.

If I am mistaken in the Kentucky law, and the courts of the state shall sustain as legal this discrimination on account of race and color, the plaintiff and others of like condition are not without remedy, but may have the question passed upon by the supreme court. *Virginia* v. *Rives,* 100 U. S. 313; *Heal* v. *Delaware,* 103 U. S. 370.

NOTE. Where a state has been guilty of no violation of the provisions of the thirteenth, fourteenth, and fifteenth amendments to the constitution of the United States, no power is conferred on congress to punish private individuals, who, acting without any authority from the state, and it may be in defiance of law, invade the rights of the citizen which are protected by such amendments. So, where an act of congress is directed exclusively against the action of individuals, and not of the states, the law is broader than the amendments by which it is attempted to be justified, and is without constitutional warrant. *Le Grand* v. *U. S.* 12 FED. REP. 577, (opinion by Mr. Justice Woods,) and the elaborate note by Mr. Desty. Congress had no power under the fourteenth amendment to protect the right "to the full and equal enjoyment of the accommodations, advantages, facilities, and privileges of theaters and inns" against violation by individuals acting in their private capacity, and to that extent the civil-rights act of March 1, 1875, is unconstitutional. Charge to grand jury by Judge Emmons, (May, 1875, U. S. C. C., W. D. Tenn.,) 2 Am. L. T. Rep. (N. S.) 198. *Contra, U. S.* v. *Newcomer,* (U. S. D. C., E. D. Pa., Feb. 1876,) 22 Int. Rev. Rec. 115, *Cadwallader,* J. The same question was before Judges Blatchford and Choate, and they divided and certified it to the supreme court. *U. S.* v. *Singleton,* 1 Crim. Law Mag. 386. For a further discussion of this subject, see Cooley, Torts, 284–6, and note to *U. S.* v. *Buntin,* 10 FED. REP. 736.—[REP.